**The STATE of Texas, ex rel. Travis B. BRYAN, III, District Attorney of Brazos County, Texas, Relator**

v.

**W.T. McDONALD, Jr., Presiding Judge, 85th Judicial District Court of Brazos County, Texas, (et al.), Respondent.**

No. 69048.

Court of Criminal Appeals of Texas, En Banc.

Nov. 3, 1982.

Rehearing Denied Dec. 22, 1982.

Travis B. Bryan, Jr., pro se.

W.T. McDonald, Jr., pro se.

Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., State's Atty., Austin, for the State.

OPINION

McCORMICK, Judge.

This action comes before us on an application for a writ of mandamus. The relator, Travis B. Bryan, III, the district attorney of Brazos County, is seeking a writ of mandamus declaring void an order issued by the respondent, W.T. McDonald, Jr., Presiding Judge of the 85th Judicial District Court, and further directing the respondent to vacate the said order.

---

The record shows that an individual named Burtis Dockery pled guilty and was convicted of robbery in Cause No. 13,771, the State of Texas v. Burtis Dockery, in the 85th Judicial District Court of Brazos County. On March 16, 1982, the judgment and sentence in that cause number was signed by Judge McDonald. Dockery was transferred to the Texas Department of Corrections on the same day. It was later noted that the judgment and sentence erroneously stated that Dockery had been convicted of aggravated robbery, rather than robbery. Thus, on April 8, 1982, Judge McDonald signed a nunc pro tunc judgment and sentence, thereby correcting the error. This nunc pro tunc judgment and sentence was filed on April 12, 1982. Thereafter, in June of 1982, Dockery filed two motions for suspension of sentence (shock probation). On September 17, 1982, 185 days after Dockery began serving his sentence, the respondent granted Dockery's motion for shock probation.

The relator argues that the respondent acted without jurisdiction and thus the order granting Dockery shock probation is void. We agree. Article 42.12, Section 3e(a), V.A.C.C.P., provides the following:

"For the purposes of this section, the jurisdiction of a court in which a sentence requiring confinement in the Texas Department of Corrections is imposed for conviction (of a felony) shall continue for 180 days from the date the execution of the sentence actually begins. After the expiration of 60 days but prior to the expiration of 180 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, if in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary. Probation may be granted under this section only if:

(1) the defendant is otherwise eligible for probation under this article; and

(2) the defendant had never before been incarcerated in a penitentiary serving a sentence for a felony; and

(3) the offense for which the defendant was convicted was other than those defined by Section 19.02, 20.04, 21.03, 21.05, 22.03, 22.04(a)(1), (2), or (3), 29.03, 36.02, 38.07, 71.02 or a felony of the second degree under Section 38.10, Penal Code."

It is clear that the trial court's jurisdiction to grant shock probation continues only for 180 days from the date the execution of the sentence actually begins. Any action taken by the trial court, after the 180th day is void because the court is acting without jurisdiction.

This is not the first time we have seen such a factual situation. In *Tamez v. State,* 620 S.W.2d 586 (Tex.Cr.App.1981), a panel of this Court found that the trial court acted without jurisdiction in placing the appellant on shock probation 126 days after commencement of the execution of the sentence when the statute allowed jurisdiction to continue for only 120 days.[1] In *Adams v. State,* 610 S.W.2d 780 (Tex.Cr.App.1981), another panel of this Court found the trial court acted without jurisdiction when it granted shock probation 133 days after the execution of the sentence actually began. And in *Houlihan v. State,* 579 S.W.2d 213 (Tex.Cr.App.1979), Judge Clinton, writing for the Court en banc, said:

"Section 3e(a) uses language concerning 'jurisdiction' of a trial court in this special situation that, once again, is clear and unambiguous. . . .

"Plainly and unequivocally the Legislature sought to accomplish two purposes: One, to expand jurisdiction for 120 days and, two, to require a ruling by the court in the second 60 day period. Taken together the two provisions admit of no

1. Prior to September 1, 1981, Article 42.12, Section 3e(a) provided the jurisdiction of the trial court would continue for 120 days from the date the execution of the sentence actually began.

other construction than that jurisdiction to act ceases when the 120 day period has expired." 579 S.W.2d at 219.

See also: *Ex parte Thomas Perry Rogers,* 629 S.W.2d 741 (Tex.Cr.App.1982).

The amicus curiae advances several arguments in opposition to the granting of this writ of mandamus. Initially, he argues that the 180 day period should be computed from the date the nunc pro tunc judgment and sentence were entered, since the sentence imposed on March 16, 1982, assessed a four year term for the offense of aggravated robbery and thus was void. However, the record is clear that Dockery was convicted of robbery, not aggravated robbery. Thus, the sentence he received was not a void sentence. There was merely a clerical error in the preparation of the judgment and sentence.

In *Perkins v. State,* 505 S.W.2d 563 (Tex. Cr.App.1974), this Court approved the action of the trial court in entering a nunc pro tunc order correcting the judgment and sentence to reflect a conviction for felony theft rather than for burglary as entered originally as a result of clerical error. And, in *Gibson v. State,* 488 S.W.2d 462 (Tex.Cr. App.1972), this Court approved the trial court's action in entering a nunc pro tunc order correcting the judgment and sentence to reflect two convictions for sale of heroin, rather than possession of heroin. See also: *Resnick v. State,* 574 S.W.2d 558 (Tex.Cr. App.1978).

The purpose of a nunc pro tunc order is to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not entered of record at the proper time. *Alvarez v. State,* 605 S.W.2d 615 (Tex.Cr.App.1980).

Irregardless, Section 3e(a) provides that for purposes of considering shock probation the jurisdiction of the trial court "shall continue for 180 days from the date the execution of the sentence actually begins." See, *Houlihan v. State,* supra. The record clearly shows Dockery began his sentence on March 16, 1982, and any computation must begin from that date.

Next, the amicus curiae argues that mandamus is not available here because the granting of shock probation was a discretionary act. We agree that between 60 days and 180 days after Dockery began serving his sentence the respondent had discretionary authority to grant or deny Dockery's application for shock probation. However, once the 180th day passed, all discretion was removed. At that point, the respondent lost all of his discretionary authority and any decision on Dockery's motion was purely ministerial. The respondent entered a void order granting shock probation when he had no authority to do so. Under these circumstances, mandamus is available to correct the respondent's failure to follow the dictates of Article 42.12, Section 3e(a), supra. See: *State ex rel Vance v. Routt,* 571 S.W.2d 903 (Tex.Cr.App.1978).

Finally, the amicus curiae asks us to reconsider our holding in *Houlihan v. State,* supra, and find that the 180 day period under Article 42.12, Section 3e(a) contemplates only the filing of a motion rather than the ruling of the trial court. This we decline to do.

Thus, we conclude that, according to the clear and unambiguous language of the statute, the respondent was without authority to grant shock probation to Dockery. Accordingly, such order is void.

We accordingly grant relator's application for writ of mandamus and order the respondent to withdraw its order granting shock probation to Dockery. However, the writ will issue only in the event of a failure to comply with the directives contained herein, since we presume respondent will act accordingly.

It is so ordered.

ROBERTS, J., not participating.

CLINTON, Judge, concurring.

The opinion of this Court in *Houlihan v. State,* 579 S.W.2d 213 (Tex.Cr.App.1979) pointedly stated:

"So, here, the forum to petition for redress for relief from untoward consequences of clear meaning of unambiguous

statutory language is the Legislature that enacted it."

*Houlihan v. State,* supra, at 220. That opinion was delivered March 28, 1979—while the Legislature was in session.

While we do not know that the *Houlihan* opinion received much attention, at least one application of its holdings generated public outcry that prompted demands for legislative action. Responding to expressed concerns the Legislature extensively revised Section 3e of Article 42.12, V.A.C.C.P. However, significantly the revision retained intact "jurisdictional" provisions construed in *Houlihan.*

Thus, given ample opportunity to grant "relief from untoward consequences of clear meaning of unambiguous statutory language," the Legislature demurred. Now it would be most unbecoming for this Court to do that which the Legislative Department has declined, for we are constitutionally admonished against "exercis[ing] any power properly attached to either" of the other departments of Government. Article II, Constitution of the State of Texas. Providing procedural framework for punishment for crime is in the domain of the Legislature.

Accordingly, I concur in opinion and judgment of the Court.

TEAGUE, Judge, dissenting.

This is an original application for a writ of mandamus brought by the duly elected District Attorney of Brazos County, the Hon. Travis B. Bryan, requesting this Court to order the Hon. W.T. McDonald, Jr., the regular presiding judge of the 85th Judicial District Court of Brazos County, to vacate an order he entered which suspended the further execution of the penitentiary sentence of one Burtis Dockery. It is claimed by Bryan that Judge McDonald's order, that accorded Dockery "shock probation", is void because, at the time the order was rendered, the trial court had lost jurisdiction over the subject matter.

In granting Bryan the application, I find that the majority of this Court has blindly followed language found in *Tamez v. State,* 620 S.W.2d 586 (Tex.Cr.App.1981); *Adams v. State,* 610 S.W.2d 780 (Tex.Cr.App.1981); and *Houlihan v. State,* 579 S.W.2d 213 (Tex. Cr.App.1979). It has also, sad to say, literally read Art. 42.12, Sec. 3e, V.A.C.C.P., a humanitarian statute enacted by the Legislature of this State, which statute is better known as the "shock probation" law, in reaching its uncalled for result. I must dissent to such a literal construction of the statute, especially when such construction leads, as it does here, to an unjust result. See *Rector of Holy Trinity Church v. U.S.,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed.2d 226 (1892).

The record in this cause reveals that Dockery was incarcerated in the Texas Department of Corrections on March 16, 1982, after Judge McDonald assessed Dockery a four year penitentiary sentence for committing the felony offense of robbery. On June 4, 1982, eighty days after Dockery's sentence "actually began," see *Adams v. State,* supra, Dockery's attorney, the Hon. William W. Vance, filed in Judge McDonald's court an application for "shock probation". Dockery himself filed a similar pro se motion one week later. Other than the filing of the instruments, the record does not indicate that any affirmative action was taken on either of the instruments until September 8, 1982. The record does indicate that on June 23, 1982, Vance wrote Judge McDonald, reminding the judge of the need to obtain Dockery's penitentiary record and to conduct a hearing on the application for shock probation, which request was authorized by the provisions of Art. 42.12, Sec. 3e, supra. On September 10, 1982, Judge McDonald issued a bench warrant to have Dockery brought to the trial court. The warrant was executed and filed on September 12, 1982, one hundred eighty days after Dockery had first entered the penitentiary. A hearing on the application for shock probation commenced on September 15, 1982, sans Dockery.[1] After the

1. Prior to September 1, 1981, no hearing was required before shock probation could be granted.

Assistant District Attorney, the Hon. Bill Turner, questioned whether the trial court had jurisdiction to hear the matter, Judge McDonald reset the hearing until September 17, 1982, in order to give the parties an opportunity to research the subject of jurisdiction, and to assist the trial court in determining whether jurisdiction over the subject matter had been lost.

On September 17, 1982, after conducting the hearing, see Art. 42.12, Sec. 3e(c), supra, Judge McDonald suspended further execution of Dockery's penitentiary sentence and placed him on probation, despite the State's contention that the trial court no longer had jurisdiction to do so. See *Tamez, Adams,* and *Houlihan,* supra.

Thereafter, Bryan, the District Attorney, filed with this Court his application for writ of mandamus.

I believe that this Court should reconsider its past decisions on this point, and should consider how the Federal Courts have interpreted Federal Rule 35, Fed.R.Cr.Proc., the Federal reduction of sentence statute. As the majority declines to do this, I shall. But first, I shall acknowledge what this Court stated in *Houlihan,* supra.

In *Houlihan,* supra, this Court, speaking through Judge Clinton, applied a "jurisdictional test" in interpreting the shock probation law, and the time set out in the State statute. He distinguished Federal decisions interpreting Federal Rule 35 in this manner: "Unlike Rule 35, Section 3e is cast in terms of 'jurisdiction' of the court to act during the second 60 days period and within the deadline prescribed." I do not find that distinction a valid one for the simple reason that all Federal Courts, including the United States Supreme Court, have held that Rule 35 is jurisdictional.

To date, the Federal Circuit Courts of Appeals have construed Rule 35 to allow a trial judge to reduce a penitentiary sentence of a convicted felon after the 120 day time limit has expired—as long as the motion or application for reduction of sentence had been filed within the time limit and the delay in granting the sentence reduction by the trial court was reasonable.[2]

I do not believe in this instance a literal reading and interpretation of the Texas' shock probation statute is either proper or necessary. The Fourth Circuit Court of Appeals, in *United States v. Stollings,* 516 F.2d 1287 (4th Cir.1975), made the following observation regarding a literal reading and interpretation of Rule 35:

> We cannot assume that [a literal] reading [of the Rule] was intended when the consequences would be so devastatingly and arbitrarily fortuitous. If delay flows from the incapacity, the absence, or the preoccupation of the judge, its consequences should not be visited upon the prisoner.

The United States Supreme Court, see *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), and all of the Federal Circuit Courts of Appeals have held that Rule 35 is jurisdictional as to a trial judge's authority to act. Nevertheless, the Federal Circuit Courts of Appeals agree that a trial judge retains that jurisdiction for a reasonable period of time in which to make a decision on a motion or application for reduction of sentence. Additionally, the Kansas Supreme Court, in addressing an almost identical reduction of sentence statute, has this year arrived at the same conclusion. See *State ex rel Owens v. Hodge,* 641 P.2d 399 (Kan.Sup.Ct.1982).

2. See *United States v. Mendoza,* 581 F.2d 89 (5th Cir.1978), modifying 565 F.2d 1285 (5th Cir.1978); *United States v. Rice,* 671 F.2d 455 (11th Cir.1982); *United States v. De Mier,* 671 F.2d 1200 (8th Cir.1982); *United States v. Smith,* 650 F.2d 206 (9th Cir.1981); *The Government of the Virgin Islands v. Gereau,* 603 F.2d 438 (3rd Cir.1981); *United States v. Stollings,* 516 F.2d 1287 (4th Cir.1975). The District of Columbia Circuit, in *United States v. Pollack,* 655 F.2d 243 (D.C.Cir.1980), questioned whether the exception to the time limitation was still applicable in light of *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). In light of the issue that was before the Supreme Court in *Addonizio,* it is difficult for me to understand the concern manifested by the District of Columbia Court. In any event, the Fifth Circuit has held that the result regarding the extension of time beyond the stated time limit is due to statutory construction, and not constitutional requirements of due process. *Soto v. Wainwright,* 601 F.2d 184 (5th Cir.1979).

In *United States v. American Trucking Association,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), the Supreme Court of the United States made a like observation, regarding the literal reading of a statute versus giving the statute an interpretation based on its purpose.

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.

In *United States v. Mendoza,* 565 F.2d 1285 (5th Cir.1978), aff'd 581 F.2d 89 (5th Cir.1978), the Fifth Circuit Court of Appeals refused to "slavishly" follow the literal language of such a statute as is before us. The Court stated the following:

We need not, indeed must not, slavishly follow the literal language of the Rule when that language leads us through the looking glass to an unjust and unreasonable result ... The lower court's failure to rule on the motion in time was wholly beyond the convicted defendant's control.

Art. 1.26, V.A.C.C.P., mandates the following, regarding interpreting the provisions of the Code of Criminal Procedure: "The provisions of this Code shall be liberally construed so as to attain the objects intended by the Legislature: The prevention, suppression, and punishment of crime."

It appears clear that the Legislature enacted the law of shock probation to improve our system of criminal jurisprudence; in particular, to enable a trial judge to punish a convicted felon by giving him a "taste" of the penitentiary, yet allow the remainder of the felon's sentence to be probated, "if in the opinion of the judge the defendant would not benefit from further incarceration in the penitentiary." Art. 42.12, Sec. 3e(a), supra.

In respect to the inmate, Dockery, Judge McDonald has made the reasoned determination that Dockery will "not benefit from further incarceration", and should therefore be released on supervised probation. The majority's literal reading of the statute, however, requires that Dockery be reincarcerated in a prison system that is already bulging at the seams and what may be, outside of the Communist countries, the largest penal system in the world, as well as what may be the most expensive penal system of the States of the Union. Recently, the citizens of this State have been apprised that what was formerly thought of as the ideal penal system is in reality one with multiple problems of astronomical proportions, with the cost to the taxpayers of this State, in order to cure the faults and defects of Texas' penal system, likely to run into the millions of dollars. See *Ruiz v. Estelle,* 503 F.Supp. 1265 (D.C.S.D.Tex. 1980); *Ruiz v. Estelle,* 679 F.2d 1115 (5th Cir.1982). Thus, the majority by its opinion, overrules a trial judge who is far better aware of the degree of supervision Dockery needs than are the members of this Court. We should, therefore, defer to Judge McDonald's decision that Dockery will no longer benefit from further incarceration, by liberally construing the shock probation law.

The purpose of the time limitation on the jurisdiction of a trial judge to grant shock probation is obviously similar to the two-fold function of the limitation of Federal Rule 35: It protects trial judges against repeated importunities by those persons sentenced, and it ensures that the trial judge will not usurp the responsibilities of parole officials by retaining jurisdiction indefinitely and acting on a motion in light of the movant's conduct in prison. *United States v. Smith,* 650 F.2d 206 (9th Cir.1981). By restricting any delay beyond the 180

days allowed by the statute to a reasonable period of time, with a concomitant burden on the inmate to demonstrate the reason for the delay at the hearing, these purposes can be maintained, while yet effectuating the overall purpose of the shock probation statute.

The inmate, Dockery, filed his application for shock probation 100 days before the time limit had expired, and followed it up with a letter to Judge McDonald about 3 weeks later, thus clearly giving Judge McDonald ample notice to timely request "a full and complete copy of the defendant's penitentiary record while incarcerated," see Art. 42.12, Sec. 3e(b), supra, and to conduct the hearing now required before Judge McDonald could grant the application or motion for shock probation. Sec. 3e(c), *Id.* Through no fault of Dockery's, no request for Dockery's penitentiary record was made by Judge McDonald—until 4 days before the 180 days was to expire, which proved to be an inadequate amount of time in order to obtain that record, retrieve Dockery from the penitentiary, and conduct a hearing on the application or motion for shock probation. Nevertheless, all of these procedures were briskly accomplished, and Judge McDonald made the decision to grant Dockery shock probation only 5 days after the literal time limitation.

If the majority of this Court is concerned that an inmate might abuse the proposed lenient construction of the statute, and not file his application until there is insufficient time to reasonably obtain the inmate's penitentiary record and conduct a hearing, it could adopt the rule proposed by Justices Goldberg and Morgan, see *United States v. Mendoza,* 565 F.2d at 1291–1292, and require that the inmate must file his application by some arbitrary deadline, such as within a certain number of days before the deadline, before he could take advantage of any grace period.

There is yet another sound reason why this Court should reconsider the issue, and resolve it favorably to the Respondent, Judge McDonald. This Court's decisions of *Houlihan, Adams,* and *Tamez, supra,* were all decided under a shock probation statute which did not require a hearing before shock probation could be granted by a trial judge. Theoretically, if a trial court judge was inclined to grant shock probation under the statute before it was amended, and it was noted that insufficient time remained in order to conduct a hearing, the trial judge could have summarily granted shock probation, giving the applicant the benefit of the doubt where the failure to conduct the hearing was the result of the trial court's inability to earlier commence the procedures. I find that under the present statute this summary grant is no longer possible.

I have also concluded that there is one terrible result that may flow from this Court's decision, which stems from a literal reading of the shock probation statute. The terrible result of today's decision is that the decision now requires the applicant, or his attorney, family, or friends, to inundate a trial judge with repeated requests to begin the proceedings, if they have not obviously been commenced. I believe that many trial judges prefer not to commence proceedings until near the end of the time limit, so that they will have a more complete record of the applicant's behavior while he or she is incarcerated, on which record they will in all probability base their decision whether or not to grant the application or motion. Since most applicants, their families, friends, and attorneys may not be aware of a given trial judge's habit of conducting a hearing at a late date, after today's decision I predict that those persons will barrage a given trial judge with oral or written requests so that he will not forget about the time limitation, which I believe may cause a given trial judge to become so irritated that he will summarily deny the application, when he possibly would have otherwise granted it.

I, therefore, believe that the shock probation statute should be construed and interpreted in such a manner as to permit the trial courts of this State to act on an application or motion for shock probation, which has been timely filed, within a reasonable

period of time after the expiration of the time set out in the statute. However, the suggested grace period for ruling on or making a decision regarding the application or motion should be conditioned upon the requirements that the application or motion was timely filed and has been on file for a reasonable period of time in advance of the deadline. This grace period, if needed, will enable a given trial judge reasonable time to obtain the applicant's prison record and to conduct a hearing without undue time pressure being placed on him or her. Trial courts would thus have jurisdiction beyond the 180 day time limitation, which grace period would absorb such things as inadvertence, preoccupation with other pressing court matters, negligence, or the mere need for additional information in order to judiciously act on or make a decision regarding an application or motion for shock probation.

I, therefore, conclude that the majority's opinion, as well as this Court's decisions of *Houlihan, Adams,* and *Tamez,* supra, effectively decrees that trial court judges turn into pumpkins at midnight on the 180th day, thereby depriving an otherwise deserving inmate of his coach to the state of probation. In situations like the one before us today, such a holding that the majority makes brings about an unconscionable result. Because I believe that the shock probation law, in light of the purposes for which it was enacted, is a humanitarian type statute, it should be, as Judge McDonald did, interpreted in the spirit of humanitarianism, and not according to former doctrines governing common law pleadings.

I, therefore, respectfully dissent to the majority's holding, which I believe applies too literal an interpretation to a worthwhile statute.