**Albert Jack WILLIAMSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1103–83.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 26, 1984.

C. David Stasny, Bryan, for appellant.

Travis B. Bryan, III, Former Dist. Atty., Bill R. Turner, Dist. Atty., and Rodney Boyles, Asst. Dist. Atty., Bryan, Robert Huttash, State's Atty., Austin, for the State.

## ORDER ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

### PER CURIAM

It now appearing that the decision to grant appellant's petition for discretionary review was improvident, the appellant's petition for discretionary review is hereby ordered dismissed.

CLINTON, Judge, dissenting.

The decision of the Houston (14th) Court of Appeals that enough members of this Court voted to review was rendered in an unpublished opinion in its Cause No. B14–83–104–CR July 21, 1983. To provide an understanding of what the issue is, I set out the text of that opinion in full.

"This is an appeal from an order revoking probation. The offense is burglary of a building. The punishment is imprisonment for ten years.

In his sole ground of error, appellant asserts that the trial court was not neutral and detached in revoking his probation and imposing sentence. In response, the State alleges that the appellant is in no position to complain of the probation revocation because he had been given probation unlawfully.

Initially, appellant pled guilty and accepted deferred adjudication. On December 6, 1981, the trial court adjudicated appellant's guilt and sentenced him to ten years. On June 16, 1982, 191 days after sentencing, the trial court entered a 'shock probation' order. It is from the revocation of this probation that appellant appeals.

If appellant is improperly granted probation, he cannot thereafter complain of error in the revocation of that probation. *Tamez v. State*, 620 S.W.2d 586 (Tex. Crim.App.1981). The trial court is jurisdictionally precluded from granting shock probation after 180 days 'from the date the execution of the sentence begins.' TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3e(a); *State ex rel Bryan v. McDonald*, 642 S.W.2d 492 (Tex.Crim. App.1982). Execution of the sentence begins on the date appellant is actually incarcerated under the sentence imposed and the jurisdictional time limits run from that date. *Tamez, supra.* Therefore, the trial court was without jurisdiction to grant 'shock probation' and appellant cannot complain of the revocation of this probation. Appellant's sole ground of error is overruled.

Accordingly, the judgment of the trial court is affirmed."

A majority of this Court has now determined that appellant's petition for discretionary review was improvidently granted. For reasons about to be stated, I respectfully dissent to that determination.

When the Court decided *Houlihan v. State*, 579 S.W.2d 213 (Tex.Cr.R.1979) and State ex rel *Bryan v. McDonald*, 642 S.W.2d 492 (Tex.Cr.App.1982), as well as several other cases in between, except for extending a time period, on the point at issue the statute read just as it does today, *viz:*

"Sec. 3e. (a) For purposes of this section, the jurisdiction of a court in which *a sentence* requiring confinement in the Texas Department of Corrections

*is imposed* ... shall continue for 180 days from *the date the execution of the sentence actually begins.* After the expiration of 60 days but prior to the expiration of 180 days from *the date the execution of the sentence actually begins,* the judge of the court that *imposed such sentence* may ... suspend *further execution of the sentence imposed* and place the defendant on probation ..." [1]

The opinion of the court of appeals notes that the trial court adjudicated guilt and "sentenced" appellant on December 6, 1981, and starts counting from that date. Under Article 42.09, § 1, V.A.C.C.P., "sentence begins to run on the day it is pronounced," unless, of course, accused gives notice of appeal and is enlarged on bail, *id.,* § 2, and the court seems to have equated that day with "the date appellant is actually incarcerated under the sentence imposed," citing *Tamez v. State,* 620 S.W.2d 586 (Tex.Cr.App.1981). With such reasoning I must disagree.

Simply stated, since each has its own legal connotation the date a sentence "begins to run" may not be "the date the execution of the sentence actually begins," as a factual matter.

Though free to choose "the day [sentence] is pronounced" as a starting point for continuing jurisdiction of the trial court that imposed it, the Legislature devised another formulation when it wrote § 3e(a), supra. And, as in *Houlihan,* we may not know all that was contemplated "when it so carefully used and reiterated the phrase," but read literally "it means when a defendant actually begins his sentence," *Houlihan,* supra, at 217.

That a sentence "begins to run on the day it is pronounced" does not necessarily mean that "a defendant actually begins his sentence" on that same day or, to use the statutory phrase, that "the execution of the sentence actually begins" on the same day

it is pronounced. To pronounce a sentence is not to execute it. A sentence is "that part of a judgment ... that orders the punishment to be carried into execution in the manner prescribed by law," Article 42.-02, V.A.C.C.P. Pronouncing a sentence and carrying it into execution are separate actions that rarely, if ever, occur simultaneously for the simple reason that until a sentence is included in a written judgment there is no formal commitment for a sheriff or other peace officer to execute, nor to authorize the Department of Corrections to admit a convict. Thus, though a sentence may be "running" in time from date of pronouncement, still *execution of it may not have "actually" begun.*

Therefore, we must answer the question left open in *Houlihan:* When does execution of a sentence actually begin? There, for purposes of the opinion, we said it was either on the day Houlihan had been arrested on a capias after mandate and confined in county jail or on the day he was delivered to and admitted by Texas Department of Corrections. But since arrest was followed the next day by delivery, the date was not crucial; we found it unnecessary to decide "which date was truly contemplated by the Legislature," and did not.

In the instant case, however, we confront a set of very different circumstances. The trial court determined to proceed with an adjudication of guilt on the original charge, and did adjudicate guilt, assess punishment and pronounce sentence on December 7, 1981.[2] From the record we know that appellant had made bail October 23, 1981 and that a capias was ordered issued November 19, but his precise status on or about December 7 is unclear. A written judgment was signed December 18, 1981 and filed December 21, 1981; in it appears the following:

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. The judgment recites that took place December 6, but since that was a Sunday and the

docket sheet entry of that proceeding is dated December 7, as is a transcription of the notes of the court reporter, we assume the judgment recitation is a clerical error.

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the Defendant be punished by confinement in the Texas Department of Corrections for a term of ten (10) years ... and that the Defendant be *remanded to jail to await the further orders of the Court.*

The defendant shall receive credit on his sentence for the time spent in jail from the n/a day of n/a, 19n/a, to the n/a day of n/a, 19n/a, for a total of n/a days credit."

While the trial court did pronounce sentence December 7, the judgment merely remands appellant to the custody of the sheriff to await further orders of the court, and there is not in this record any further order of the court in terms of a sentence which "orders that the punishment be carried into execution in the manner prescribed by law" in accordance with Article 42.02, supra. Nevertheless, it is undisputed that appellant was transferred to and incarcerated in TDC at its Ferguson Unit.

Furthermore, February 23, 1982 appellant filed his motion for "shock probation;" the trial judge promptly issued a written order directing the clerk of the court to obtain a copy of record of appellant while incarcerated in TDC and, after receiving it, signed an order recounting those events and finding in pertinent part:

"that all statutory requirements have been met and that defendant would not benefit from further incarceration and the sentence of incarceration heretofore imposed should be suspended and the defendant should be placed on probation, [and ordering the sheriff to produce appellant before the court on June 17, 1982] for the purpose of having a Judgment of Probation entered herein."

As it turned out, that proceeding was had one day earlier. Addressing appellant at one point the trial judge said, "The fact of the matter is that you did have your probation revoked and *you have been over there almost one hundred seventy some-*

*thing days,* and ... we are going to give you ... another shot at probation ..."

Thus, this record will support findings that on December 7 sentence was pronounced, but appellant was not immediately transferred to TDC, and that on or about December 23 appellant was admitted to TDC.[3]

For purposes of § 3e(a), I would find that execution of sentence did *not* actually begin when sentence was pronounced in open court nor when in writing appellant was remanded to the custody of the sheriff to await further orders of the court. Unless some exceptional circumstance justifies otherwise, a sentence to a term of years upon conviction of a felony offense is to be served in TDC. That certainty bases the rationale for "shock probation." The theory is much as the trial judge in this case stated to appellant at the end of that December 7 hearing, *viz:*

"If you like it over there, well, you can stay for the whole ten years until you get enough credit to get out on parole. If you don't like it, you can do everything they say and get a good conduct report and when I get it I'll consider it when [your lawyer] files a motion, which he'll do."

The "shock" is being incarcerated in a penitentiary operated by TDC for a reasonable period of time, not being confined in a county jail run by the local sheriff. *Tamez v. State,* supra, at 588–589, n. 3.

Accordingly, I would hold that "the date the execution of the sentence actually begins" in this kind of case is the day a convict is admitted to TDC. In the instant cause it had to be after a judgment had been signed by the judge of the trial court and filed by the clerk; that is, after December 21. On June 16 the trial judge found that he was taking action within the 180 day period since appellant had "been over there," and under the circumstances of this record, I would accept his finding. Therefore, his June 16, 1982 judgment of proba-

3. That is one day after deadline for filing notice of appeal under Article 44.08, § (c), V.A.C.C.P.

tion was timely under § 3e(a), and we should so hold.

ODOM, MILLER and CAMPBELL, JJ., join.