The STATE of Texas, Appellant,

v.

Jesse James SMITH, Appellee.

No. 01–88–00572–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 17, 1988.
Discretionary Review Granted
March 1, 1989.

Michael J. Guarino, Crim. Dist. Atty., Roger L. Ezell, Asst. Dist. Atty., Galveston County, for appellant.

Rachel Blumberg, Galveston, for appellee.

Before EVANS, C.J., and COHEN and LEVY, JJ.

OPINION

EVANS, Chief Justice.

Appellee pleaded guilty to the offense of robbery and was sentenced to 10 years confinement. He was remanded into the custody of the sheriff on February 10, 1988, and held in the county jail pending transfer. He remained in the county jail until June 1, 1988, when a hearing was held on his motion for probation following execution of sentence. At that hearing, the court granted appellee's motion and issued an order granting suspension of sentence, or "shock probation." Appellee was subsequently released from the county jail and was placed on probation.

Pursuant to Tex.Code Crim.P.Ann. art. 44.01 (Vernon 1988), the State brings this appeal, contending that the order granting shock probation was improperly granted.

■ As a threshold matter, appellee contends that this Court lacks jurisdiction to hear the appeal because the granting of a motion for shock probation is not one of the enumerated categories under article 44.01 in which the State is allowed to appeal in a criminal case. *See* Tex.Code Crim.P.Ann. art. 44.01 (Vernon 1988). However, article 44.01(b) provides, "The State is entitled to appeal a sentence in a case on the ground that the sentence is illegal." Because that is precisely the State's position in this case, we conclude that the appeal is proper.

■ In a single point of error, the State argues that the trial court was without authority to grant shock probation because appellee had never served any of his sentence in the Texas Department of Corrections (hereinafter "TDC"). This appears to be a case of first impression.

The applicable portion of Tex.Code Crim. P.Ann. art. 42.12, sec. 3e.(a) (Vernon 1988) reads:

> For the purposes of this section, the jurisdiction of a court in which a sentence requiring confinement in the Texas Department of Corrections is imposed for conviction (of a felony) shall continue for 180 days from the date the execution of the sentence actually begins. After the expiration of 60 days but prior to the expiration of 180 days from the date the execution of the sentence actually begins, the judge of the court that imposed

such sentence may on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, if in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary.

It is the State's position that the "shock" of spending time in the TDC, not merely in the county jail, is what the legislature envisioned as the motivating factor that might lead a defendant to become rehabilitated. Therefore, the State contends, a trial judge would have no authority to issue an order granting shock probation unless and until a defendant had actually been incarcerated in the TDC for a period of not less than 60 days nor more than 180 days. Because appellee in this case had never been transferred to the TDC to begin serving the sentence imposed, the State argues that the grant of shock probation was improper.

The record reflects that the trial court's judgment orders appellee confined "in an institution operated by the Department of Corrections of the State of Texas" for the requisite period, and it further orders that he "be delivered by the Sheriff of Galveston County, Texas, *immediately* to the Department of Corrections, State of Texas, or any other person legally authorized to receive such convicts, who shall convey him to said penitentiary." (Emphasis added.) The judgment then orders appellee remanded into the custody of the Sheriff of Galveston County, Texas, "until such time as the Sheriff can obey the directions of this sentence."

The State concedes that appellee had no power or control over his transfer to the TDC. The State simply contends that there is no statutory authority for shock probation under the circumstances presented. We disagree, concluding that appellee should not be penalized by the State's failure to carry out the court's express order. To hold otherwise would give the State the ultimate authority to determine whether and when a defendant would *ever* be eligible for shock probation.

There is no express language in the statute that requires that a defendant be incarcerated in the TDC before he becomes eligible for shock probation. The statute addresses the jurisdiction of a court in which a sentence "requiring confinement in the Texas Department of Corrections is imposed." Here, the judgment entered expressly orders appellee's confinement in the TDC.

Nor is there any longer a requirement that the trial judge review a defendant's penitentiary record prior to granting shock probation. Previously, article 42.12, sec. 3e.(b) read:

When the defendant files a written motion requesting suspension by the court of further execution of the sentence and placement on probation, *or* when requested to do so by the court, the clerk of the court shall request a copy of the defendant's record while incarcerated from the Texas Department of Corrections ... (emphasis added).

Tex.Code Crim.P.Ann. art. 42.12, sec. 3e.(b) (Vernon 1979), ch. 306, sec. 1, 1977 Tex. Gen.Laws 821, *amended by* ch. 69, sec. 1, 1981 Tex.Gen.Laws 821.

In 1981, this was changed to read as follows:

When the defendant files a written motion requesting suspension by the court of further execution of the sentence and placement on probation, *and* when requested to do so by the court, the clerk of the court shall request a copy of the defendant's record while incarcerated from the Texas Department of Corrections ...

Tex.Code Crim.P.Ann. art. 42.12, sec. 3e.(e) (Vernon 1988) (emphasis added).

Prior to 1981, then, when a defendant filed a motion for shock probation, the clerk of the court was required to request a copy of his record from the TDC. Now, however, the code simply states that the clerk must request the record only when the motion for shock probation has been filed *and* the court also requires it. Thus, the only mandatory language applies to the duties of the clerk of the court.

Moreover, prior to 1981, there was no requirement that the court hold a hearing before granting a defendant's motion for shock probation. The statute currently requires a hearing before shock probation can be granted. At the hearing, the judge can review all the evidence and determine whether the defendant would be an appropriate candidate for shock probation. If a TDC record is available, the judge can request it, but the statute no longer requires the judge to do so.

Further, the language in the statute giving a trial court jurisdiction for 180 days "from the date the execution of the sentence actually begins" means the date the sentence is pronounced. *Tamez v. State*, 620 S.W.2d 586 (Tex.Crim.App.1981). In *Ex parte Rogers*, 629 S.W.2d 741 (Tex. Crim.App.1982), the court added the total time that the defendant had been incarcerated—41 days in the county jail and 90 days in the TDC—to determine that the trial court had lost jurisdiction to grant shock probation. (Under the previous statute, the trial judge was required to act within 120 days. *See* Tex.Code Crim.P. Ann. art. 42.12, sec. 3e.(a) (Vernon 1979), ch. 306, sec. 1, 1977 Tex.Gen.Laws 821, *amended by* ch. 69, sec. 1, 1981 Tex.Gen. Laws 154.) Thus, it is clear that incarceration in the penitentiary is not a prerequisite for computing a trial court's jurisdiction to grant shock probation. For purposes of shock probation, "execution of the sentence actually begins" when the defendant is sentenced and remanded to custody, whether it be in the county jail or the TDC.

In *Ex parte Morris*, 626 S.W.2d 754 (Tex. Crim.App.1982), the defendant, who was erroneously released from jail, asserted a claim for continuous time credit following his return to prison. The court refused to penalize him for an error in which he had played no part. The court held that "[a] sentence must be continuous and a prisoner or inmate cannot be required to serve [the] sentence in installments, unless it is shown that a premature or unlawful release ... resulted or occurred through some fault of the prisoner or inmate." *Morris*, 626 S.W. 2d at 756.

The State cites the dissenting opinion in *Williamson v. State*, 676 S.W.2d 428, 430 (Tex.Crim.App.1984), as support for its position that the "shock" referred to in the statute comes from being incarcerated in a penitentiary operated by the TDC, not from being confined in a county jail. But the State overlooks the previous paragraph in *Williamson*, which notes: "Unless some exceptional circumstance justifies otherwise, a sentence to a term of years upon conviction of a felony offense is to be served in the TDC. That certainty bases the rationale for 'shock probation.' " Overcrowded prison conditions that might prevent the prison system from timely accepting new prisoners would obviously qualify as such an "exceptional circumstance." *Williamson*, 676 S.W.2d at 430.

The Court of Criminal Appeals has made these observations about the shock probation statute:

The bill as originally drafted clearly evidences an intent to create a new version of probation which was to come into play after the defendant had begun serving a portion of his or her sentence. This new shock probation was to have three conditions precedent; specifically, that the sentence imposed have been less than ten years, that the defendant not have been previously incarcerated for a felony, and that the judge be of the opinion that the defendant would not profit from further incarceration.

*Ex parte Austin*, 746 S.W.2d 226, 233 (Tex. Crim.App.1988).

The bill analysis accompanying Senate Bill 695 explains that "this legislation proposes to provide for continuing jurisdiction by a trial court for the purpose of allowing probation after a defendant has actually begun serving a sentence after a finding of guilt." *Ex parte Austin*, 746 S.W.2d at 233.

In *United States v. American Trucking Associations*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (quoted in *State ex rel. Bryan v. McDonald*, 642 S.W.2d 492 (Tex. Crim.App.1982)), the United States Supreme Court observed:

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.

We find nothing in the statute as written that requires appellee to be incarcerated in the TDC before he is eligible for shock probation. We do find that such a requirement would conflict with the obvious purpose of the statute and would work an unjust result in every case where, through no fault of the defendant, prompt transfer following imposition of sentence is impractical or impossible. We accordingly overrule appellant's point of error.

The judgment of the trial court is affirmed.