Dana **HARVEY**, Appellant

v.

The **STATE** of Texas, Appellee.

No. 06–04–00095–CR.

Court of Appeals of Texas, Texarkana.

Submitted June 27, 2005.

Decided Sept. 7, 2005.

---

Don Cooksey, Law Office of Don Cooksey, Texarkana, for appellant.

Michael Shepherd, Assistant District Attorney, Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

## OPINION

Opinion by Justice ROSS.

Dana Harvey was convicted by a jury for the felony offense of driving while intoxicated. Punishment was assessed by the court at five years' imprisonment. Harvey was duly sentenced, after which the court ordered that, after 100 days' imprisonment, Harvey be brought back before the court to be considered for community supervision.[1]

Harvey raises seven points of error, which he has consolidated into five arguments. Because he failed to adequately brief it, we will not address his complaint about the trial court denying his request to have all witnesses enter the courtroom from the same door. We overrule his other points and affirm the judgment.

## FAILURE TO BRIEF ISSUE PRECLUDES REVIEW

■ Harvey's second point of error claims the trial court erred when it denied his motion for the State's witnesses not to be allowed to enter the courtroom through

---

* William J. Cornelius, C.J., Retired, Sitting by Assignment

1. After imposing a sentence committing a defendant to prison, a trial court's jurisdiction is extended for 180 days, during which period the court may, on motion of the state, defense, or sua sponte, suspend further execution of the sentence and place the defendant on community supervision. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 6 (Vernon Supp.2004–2005).

This is commonly referred to as "shock probation."

a back door, when defense witnesses entered through a different door. Harvey contends such practice unfairly bolstered the credibility of the State's witnesses.

Harvey provides no legal authority in support of this contention. A point of error that is conclusory and cites no authority presents nothing for review. *Garcia v. State*, 887 S.W.2d 862, 871 (Tex. Crim.App.1994); *Pierce v. State*, 777 S.W.2d 399, 418 (Tex.Crim.App.1989); *Burns v. State*, 923 S.W.2d 233, 237 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd). We find this point of error to be inadequately briefed and decline to address it. *See* Tex.R.App. P. 38.1(h); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex.Crim.App.1992).

## RIGHT TO SPEEDY TRIAL NOT VIOLATED

Harvey complains the trial court erred at the pretrial hearing 1) in denying his motion to dismiss, based on denial of a speedy trial;[2] and 2) in precluding him from questioning the prosecutor at that hearing. Although almost four years passed between Harvey's arrest and conviction, we hold that he suffered no constitutional deprivation.

*Proceedings Relevant to Speedy Trial Issue*

Harvey was arrested November 3, 2000. An indictment was returned against him February 22, 2001. Harvey testified at the pretrial hearing he had difficulty remembering events surrounding his arrest. He contended this loss of memory was

prejudicial to his rights. He also testified he could no longer find a witness whose testimony he believed would be important.

Harvey retained Rick Shumaker as his attorney around April 2, 2001. Shumaker testified at the pretrial hearing that several continuances were obtained between the date of his retention and February 2004, when he withdrew—at Harvey's request—as Harvey's attorney.

At the pretrial hearing,[3] the court conducted an in camera inspection of the front of the State's file. A photocopy of what the court inspected was attached to the appellate record as a sealed exhibit. The relevant entries on that exhibit are as follows:

- 4-2-01 P/T 5-14-01
- 5-14-01 Reset P/T 6-11-01
- 6-11-01 Reset P/T [entry scratched out] 8-20-01
- 8-20-01 Trial [entry scratched out] 12/10/01 Reset 1-22-01[sic] (Order PSI) Set Plea 2-4-02 per ...
- 2-4-02 Reset Plea 3-18-02
- 3-18-02 Reset Plea [entry scratched out] 4-15-02
- 4-15-02 Reset Plea [entry scratched out] 5-13-02
- 5-13-02 ~~BFAC~~ no (in Rehab) Reset 6-24-02
- 12-10-03 Reset Plea 1-5-03[sic]
- 1-5-04 Reset Plea 2-2-04
- 2-2-04 Reset Plea in Absentia 3-15-04 [4]
- 3-15-04 Set Trial 4-12-04
- 4-12-04 Set for trial Jury Selection 4-15-04/9:00 New Boston

Shumaker's testimony at the pretrial hearing corroborates the entries and the dates shown on the State's file folder. He testified some of the continuances obtained during his representation of Harvey were due to Harvey "going through ... some things," which included a twenty-eight-day stay at a residential treatment center where Harvey was treated for alcoholism.

---

**2.** *See generally* U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex.Code Crim. Proc. Ann. arts. 1.03, 1.05 (Vernon 2005).

**3.** The pretrial hearing was held April 14, 2004; voir dire of the jury panel and the presentation of the State's case-in-chief were all completed the same day.

**4.** Shumaker agreed at the pretrial hearing that, sometime around the time Harvey was

in an alcohol rehabilitation facility, he had discussed a plea in absentia with the State, although he did not remember the details of that discussion. While it is permissible in some circumstances for a defendant to plead to a misdemeanor in absentia, no such proceeding is permissible on a felony charge. *See* Tex.Code Crim. Proc. Ann. art. 27.13 (Vernon 1989), art. 27.14 (Vernon Supp.2004–2005).

Shumaker said that, at one point during the delay in bringing Harvey to trial, about one and a half years passed without receiving any contact from the trial court about the case being set for trial. The front of the State's file folder confirms there was a gap of inactivity from May 13, 2002 to December 10, 2003. Shumaker said he was always able to reach an agreement with the State about resetting the case. He confirmed the note on the front of the State's file that a presentence investigation (PSI) report was ordered August 20, 2001, and that the case was set for a plea to occur in February 2002, but was postponed to March 2002. From August 2001 to February 2004, it appears the parties anticipated the case would be resolved by a plea agreement. However, Harvey failed to appear at a scheduled hearing in May 2002, apparently because he was in the rehabilitation center. Although the trial court forfeited Harvey's bond because of this failure to appear, Shumaker was successful in persuading the State to ask the trial court to rescind the bond forfeiture, which request the trial court granted. Shumaker confirmed at the pretrial hearing that he had agreed to inform the State when Harvey had completed his rehabilitation so the case could again be set for disposition. Shumaker was uncertain as to whether he ever did this, and stated that his last recollection on the case was a setting in late 2003 or early 2004.

In early 2004, Harvey retained Don Cooksey as his new counsel. On February 2, 2004, Harvey filed several motions, including various requests for discovery, for applicable notices, for the withdrawal of Shumaker as his attorney, and for dismissal, alleging a violation of Harvey's right to a speedy trial.

*Speedy Trial Analysis*

■ In determining whether an accused has been denied his or her right to a speedy trial, a court must use a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors to be weighed in the balance include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his or her speedy trial right, and the prejudice to the defendant resulting from the delay. *Id.* No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Id.* at 533, 92 S.Ct. 2182; *Dragoo v. State,* 96 S.W.3d 308, 313 (Tex. Crim.App.2003). If a violation of the speedy trial right is established, the only possible remedy is dismissal of the prosecution. *Strunk v. United States,* 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

Almost three and one half years passed between Harvey's arrest and his trial. There was evidence some continuances had been obtained either at Harvey's request or with his approval. There was also evidence the parties contemplated entering a plea agreement. While the length of the delay is enough to justify concern,[5] the reasons for delay suggest Harvey either acquiesced in repeated postponements of the case, or did not object to such delays. He obviously did not assert his right to a speedy trial until about three years and three months after his arrest. He was tried less than three months after filing his motion for dismissal.

■ The possibility of ongoing plea negotiations was a consideration in the Texas

5. Most delays of eight months or over are considered presumptively unreasonable and prejudicial. *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

Court of Criminal Appeals' recent analysis of a speedy trial claim. *Kelly v. State*, 163 S.W.3d 722, 727 (Tex.Crim.App.2005). In stressing the deference an appellate court must give to a trial court's findings, the court stated a trial court may infer the existence of plea negotiations, even in the absence of direct evidence of the same. *Id.* Accordingly, when analyzing the reasons for the delay in bringing Harvey to trial, we consider, as the trial court likely did, the evidence of plea negotiations. Based on the significant evidence that, for as long as two and one half years, the parties intended to resolve this case by a plea agreement, we construe these reasons for the delay against Harvey, not against the State.

■ Further, in conducting our *Barker v. Wingo* analysis, we consider whether Harvey was prejudiced by the delay. Harvey testified he believed he had suffered prejudice. He also said he had attempted to subpoena an individual named Mike James. Harvey did not, however, offer any evidence as to what testimony he anticipated James would provide. He also failed to show the efforts he had made to secure James' testimony.[6] Where the defendant does not present evidence of particularized prejudice suffered as a result of the passing of time between arrest and assertion of his or her right to a speedy trial, such lack of evidence will be considered against the defendant's claim of prejudice suffered. *See Harris v. State*, 827 S.W.2d 949, 957 (Tex.Crim.App.1992); *Holmes v. State*, 938 S.W.2d 488, 491 (Tex. App.-Texarkana 1996, no pet.).

■ Considering the history of this case, and the evidence adduced in connection with Harvey's claim, we hold that: the length of the delay raises a presumption of unreasonable delay; the reasons for the delay are attributable in significant part to Harvey; plea negotiations were being conducted, and the matter was set for a plea on several occasions, and these facts weigh against Harvey's complaint; Harvey failed to affirmatively assert his right to a speedy trial for more than three years, and then received a trial within three months of his request;[7] and there is no evidence of particularized prejudice. Based on this analysis, the trial court did not err in overruling Harvey's motion for dismissal.

*No Error in Precluding Harvey from Putting Prosecutor on Stand*

■ Harvey attempted to call the prosecutor as a witness at the pretrial hearing on his motion to dismiss. Harvey's stated purpose was to "introduce a copy of the outside of [the prosecutor's] file where he kept notes regarding the proceedings in this case. I think ... in the event that this is on appeal, the appellate court would need to look at a copy of the notes on the file of the district attorney." The State provided a copy of the front of its file, the trial court reviewed that copy in camera, and the copy was sealed and forwarded to this Court for appellate review. The trial court denied Harvey's request to call the prosecutor to testify. Harvey now claims such denial was error.

Harvey received the relief he requested when the trial court made the copy of the prosecutor's notes a part of the record for appellate review. Harvey failed to make

---

6. Harvey made application for the issuance of a subpoena to compel the appearance of "Mike Jaynes," with a Texarkana address, to appear and testify at the trial.

7. The Texas Court of Criminal Appeals pointed to the defendant's trial occurring within two months of his speedy trial motion in finding that assertion of the right did not weigh in the defendant's favor. *Kelly,* 163 S.W.3d at 729.

any record of what else, if anything, he anticipated the prosecutor's testimony to provide. Nothing is preserved for appellate review. *Warner v. State,* 969 S.W.2d 1, 2 (Tex.Crim.App.1998); *Greenwood v. State,* 948 S.W.2d 542, 549 (Tex.App.-Fort Worth 1997, no pet.); *see* Tex.R.App. P. 33.2. Harvey's points of error regarding a violation of his right to a speedy trial are overruled.

## STATE PROPERLY ALLOWED TO READ JURISDICTIONAL PRIOR CONVICTIONS

■ Harvey contends the State should not have been permitted to read the complete indictment at trial, including the paragraphs detailing two prior DWI convictions. These two prior convictions, if proved, would elevate Harvey's charged offense to a third degree felony.[8] Harvey stipulated to his prior convictions, and the trial court instructed the jury that it was required to find Harvey had been previously twice convicted of DWI offenses.

This issue is controlled by the Texas Court of Criminal Appeals' rulings in *Robles* and *Tamez.*[9] In *Robles,* the appellant offered to stipulate to the existence of the two prior convictions and requested the trial court prevent the state from introducing evidence of those convictions. His request was denied. The Texas Court of Criminal Appeals held that the stipulation should have been approved and the state prevented from entering into evidence the judgments of the jurisdictional prior convictions. *Robles,* 85 S.W.3d at 213–14. In *Tamez,* the appellant offered to stipulate to his previous DWI convictions, thereby satisfying the jurisdictional requirements of Section 49.09(b). Nonetheless, the state was allowed to read the full indictment,

which contained allegations of six prior DWI offense convictions, and the state was further allowed to enter into evidence judgments proving all six previous convictions. *Tamez,* 11 S.W.3d at 199. The Texas Court of Criminal Appeals held this was unduly prejudicial to Tamez and was reversible error. The court said, "[T]he proper balance is struck when the State reads the indictment at the beginning of trial, mentioning only the two jurisdictional prior convictions, but is foreclosed from presenting evidence of the convictions during its case-in-chief." *Tamez,* 11 S.W.3d at 202.

The procedure suggested by the Texas Court of Criminal Appeals in *Tamez* is exactly what happened in Harvey's trial. Harvey claims in his brief that "the State in voir dire, and throughout the guilt-innocence phase of this case referred to and tried to refer to evidence of Appellant's prior DWI convictions which violated Appellant's right to stipulate." Harvey does not direct us to any place in the record where the State "referred to and tried to refer to" such evidence. From our review of the record, we have no such contravention of the procedures prescribed in *Tamez* and *Robles.* We overrule this point of error.

## EVIDENCE SUFFICIENT TO SUPPORT CONVICTION

Harvey claims, in a single point of error, that the evidence was legally and factually insufficient to support the jury's conviction. We disagree.

### The Evidence

Two Texarkana police officers testified that, on November 3, 2000, at around 2:00 a.m., they were concluding a traffic stop on the side of westbound Interstate 30 when

8. *See generally* Tex. Pen.Code Ann. § 49.09 (Vernon Supp.2004–2005).

9. *Robles v. State,* 85 S.W.3d 211 (Tex.Crim. App.2002); *Tamez v. State,* 11 S.W.3d 198 (Tex.Crim.App.2000).

they saw Harvey, driving a black Blazer truck, pass them and briefly cross the yellow line. The officers followed Harvey and saw him cross the yellow line again, then cross the white line to the right. When Harvey crossed to the right lane, but used the turn signal indicator for a single "blink" when the vehicle was almost entirely in the new lane, the officers determined Harvey might be impaired and activated their overhead lights to stop him. The officers both testified Harvey continued driving on the interstate for a mile to a mile and a half after they activated their patrol car's overhead lights.

Officer Greg Vickers testified he made contact with Harvey. When asked to produce his driver's license and proof of insurance, Harvey was very slow and deliberate. Vickers said that it took Harvey four to five minutes to produce his driver's license and that it was clear Harvey had difficulty understanding what Vickers was asking. Vickers smelled alcohol when Harvey lowered his window. When Harvey was told to exit his truck, Vickers and Officer Gerald Palmore observed Harvey stagger and lean against the truck for support. The officers testified that, when they asked Harvey to participate in field sobriety tests (FSTs), he was uncooperative. When Harvey did attempt to perform the FSTs, he did not perform well: he missed touching the tip of his nose three of four times; slurred his speech when reciting the alphabet; generally failed to follow instructions; swayed back and forth; and, at one point, Vickers had to extend his own hand to keep Harvey from falling. Palmore administered the horizontal gaze nystagmus test and testified that Harvey's eyes showed the onset of nystagmus before Palmore's stimulus reached the 45–degree angle. Palmore said that, based on his training and the scientific studies he had reviewed, a person with nystagmus at such points would have

a blood alcohol level of at least 0.10 percent.

Based on these preliminary observations and test results, Harvey was arrested for DWI. He was taken to the police station. The interview with Harvey at this location was videotaped and introduced into evidence. In the interview, some of the FSTs are repeated. Harvey can be clearly seen leaning against a door for support while performing a one-legged lift. He also had difficulty reciting the alphabet. Harvey agreed to provide a sample of his breath for an Intoxilyzer test, and Sergeant Bill Looney was called to administer this test. In the videotape, Harvey can be seen reaching into his pocket, then hurriedly putting his hand to his mouth and begin chewing rapidly. Looney testified that, when he was commencing the test, instead of providing a breath sample, Harvey spat tobacco juice into the mouthpiece. Looney removed, cleaned, and returned the mouthpiece. On two more occasions, Harvey failed to breathe into the machine with sufficient force to provide a useable sample. Looney marked Harvey as having refused to provide a sample.

*Legal Sufficiency*

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This calls on the reviewing court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999). It is clear

that, based on the evidence presented here, a rational jury could have found that Harvey was guilty of driving while intoxicated.

*Factual Sufficiency*

 In a factual sufficiency review, the appellate court views all the evidence in a neutral light and determines whether the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Threadgill v. State,* 146 S.W.3d 654, 664 (Tex.Crim.App.2004) (citing *Zuniga v. State,* 144 S.W.3d 477, 486 (Tex.Crim.App.2004)). If the evidence is factually insufficient, we must reverse the conviction and remand the case for a new trial. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Crim.App.1996).

 Through cross-examination of the State's witnesses and by his own witnesses, Harvey established he had suffered serious back injuries in the past and, at the time of this alleged offense, he was on medications for both his back and high blood pressure. At the interview at the police department, Harvey stated his last dose of medication was taken around noon. This was directly contradicted by Harvey's testimony to the jury that he had taken a dose of his medication before going to the bar on the night of his arrest and that he also took a pill during the video interview after his arrest.

Based on the evidence adduced in this case, there is ample evidence to support the jury's finding of guilt beyond a reasonable doubt. *See Zuniga,* 144 S.W.3d at 484–85. Likewise, we cannot say the contrary evidence is so strong the State could not have met its burden of proof. *See id.* The evidence was factually sufficient to support Harvey's conviction. We overrule Harvey's legal and factual sufficiency points of error.

## NO ERROR IN SENTENCING

Harvey's last two points of error claim the trial court erred in sentencing him to a period of "shock probation." According to Harvey, the trial court's sentence was against the great weight of the evidence. The State presented no evidence at the punishment hearing and did not cross-examine Harvey's punishment phase witnesses (including Harvey himself). In closing arguments, the State asked the trial court to place Harvey on ten years' community supervision and to put Harvey on "shock probation." Harvey's attorney asked for five years' community supervision.

We first point out that Harvey's sentence was clearly within the range of punishment prescribed by the Legislature for a third degree felony.

 Traditionally, the trial court is accorded great discretion in assessing a defendant's punishment. *Samuel v. State,* 477 S.W.2d 611, 614 (Tex.Crim.App.1972); *see also Morano v. State,* 572 S.W.2d 550, 551 (Tex.Crim.App. [Panel Op.] 1978) ("When a defendant waives a jury trial, the trial judge has discretion to assess the punishment within the range provided by law which he finds appropriate in the circumstances.").

 While it is true the State did not present evidence or cross-examine Harvey's witnesses at the punishment hearing, the trial court had before it all the evidence from the guilt/innocence phase of trial. *See Trevino v. State,* 100 S.W.3d 232, 238 (Tex.Crim.App.2003) (noting no requirement evidence from guilt/innocence be formally reoffered at sentencing). Harvey's witnesses included his Alcoholics Anonymous sponsor and a friend, also affiliated with Alcoholics Anonymous. Harvey testified he had completed a resi-

dential, inpatient treatment program for alcoholism and attends no less than five Alcoholics Anonymous meetings per week. Harvey's argument on appeal is that, because the PSI report generated by the local community supervision department did not mention "shock probation," the evidence only supports a placement on community supervision, without a term of incarceration.

The recommendation in the PSI report states, in pertinent part, "the court may wish to consider the following conditions of probation ... [b]e sentenced to Ten (10) years in the Texas Department of Criminal Justice Institutional Division, but suspended and placed on probation for a period of Ten (10) years."

As we have pointed out, sentencing is within the sound discretion of the trial court, and we review the sentence imposed by a trial court for an abuse of such discretion. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex.Crim.App.1984). Harvey has not explained how the trial court, which assessed a punishment well within the statutory range, abused its discretion in ordering Harvey to be incarcerated for 100 days and then be considered for community supervision. Such is clearly within the trial court's discretion. The statute authorizing such procedure clearly states: "the judge of the court that imposed such sentence may ... suspend further execution of the sentence...." TEX.CODE CRIM. PROC. ANN. art. 42.12, § 6(a); *see also State ex rel. Bryan v. McDonald*, 642 S.W.2d 492, 494 (Tex.Crim.App.1982). The use of "may" creates discretionary authority in the trial court. TEX. GOV'T CODE ANN. § 311.016 (Vernon 2005). A trial court will be found to have abused its discretion only if there

is no evidence or factual basis for the punishment imposed. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex.Crim.App.1984); *Benjamin v. State*, 874 S.W.2d 132, 135 (Tex.App.-Houston [14th Dist.] 1994, no pet.). Because the sentence imposed was within the applicable range of punishment, and based on the evidence before the trial court, we find the trial court did not abuse its discretion, and we find no merit in Harvey's contention.

## NO EVIDENCE TRIAL COURT CONSIDERED MATTERS OUTSIDE THE RECORD

■ As part of his complaint about the trial court's sentence, Harvey accuses the trial court of considering matters not in the record in assessing punishment.[10] Harvey made no objection at the trial court level about either the sentence or the trial court's comments at sentencing. Because Harvey did not present these issues at the trial court level, he did not preserve these allegations for our review. *See* TEX. R.APP. P. 33.1(a); *Jackson v. State*, 989 S.W.2d 842, 844 (Tex.App.-Texarkana 1999, no pet.). We overrule this point of error.

## CONCLUSION

We hold that 1) Harvey was not denied a speedy trial; 2) the State correctly read the predicate convictions for DWI as part of the indictment; 3) the evidence was legally and factually sufficient to support Harvey's conviction; and 4) there was no error in the trial court's sentence.

Accordingly, we affirm the judgment.

---

10. This contention is based on the trial court's remarks while pronouncing sentence:

 [I]t strikes me as unrealistic to believe that the three times you were arrested for DWI just happened to be the only three times you ever got behind a wheel while you were under the influence. That would just be a remarkable coincidence to me that they actually stopped you the only three times you ever were under the influence.