In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00005-CV


______________________________





IN RE: JOHNNIE TASBY









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley








MEMORANDUM OPINION



 Johnnie Tasby has filed "Plaintiff's Original Application for Writ of Mandamus" (i.e., petition
for writ of mandamus), asking this Court to order the presiding judge of the Fifth Judicial District
Court of the State of Texas to direct the district clerk of Bowie County to provide Tasby with a
certified copy of the judgment and sentence in cause number 81-F-280. But Tasby does not want
just any person (let alone a current deputy clerk) to certify that copy. Tasby demands that the copy
provided be certified by Winnie Stone, the person who served as Bowie County's district clerk in
1982--the date of the judgment of conviction. We find Tasby's petition for writ of mandamus to be
without merit, and deny it on that basis.

 The eleventh edition of Merriam-Webster's Collegiate Dictionary defines the transitive verb
"certify" as meaning "to attest authoritatively" or "to attest as being true or as represented." 
Merriam-Webster's Collegiate Dictionary 203 (11th ed. 2006). The noun "certification"
describes "the act of certifying." Id. The most recent edition of Black's Law Dictionary records
similar meanings for these words. It states that "certify" means "[t]o authenticate or verify in
writing" or "[t]o attest as being true or as meeting certain criteria." Black's Law Dictionary 241
(8th ed. 2004). That source further defines "certification" as "[t]he act of attesting." Id. Thus, these
dictionaries make clear that the process of "certification" occurs at some point in time after the thing
to be certified has already come into existence. 

 The Texas Legislature has defined the general duties of the office of the district clerk. "The
clerk of a district court has custody of and shall carefully maintain and arrange the records relating
to or lawfully deposited in the clerk's office." Tex. Gov't Code Ann. § 51.303 (Vernon 2005). The
Legislature has written that records preserved by the district clerk's office may be reproduced and
later certified as exact copies of the original records. See, e.g., Tex. Gov't Code Ann. § 51.304
(Vernon 2005) (discussing preservation, reproduction, and certification of electronically stored
records). When such copies are requested, the clerk must affirm for the court or the requesting party
that the document being produced by the clerk's office is, in fact, either the original document
entered into the record of that court or an exact replica of the requested document. This process of
attestation has come to be called "certification," and that procedure need not be performed until the
clerk prepares the requested copy of the original document. Our law does not require a district clerk
to "certify" a document, such as a judgment of conviction, at the time of its creation or when it is
filed among the papers of the court. Instead, the certification occurs when a copy of that judgment
of conviction is subsequently requested by the court or a party.

 In this case, Tasby concedes the Bowie County district clerk has provided him with a copy
of his original judgment of conviction, as requested. Tasby further admits that a current deputy
district clerk has affirmatively attested ("certified") that this copy of Tasby's judgment of conviction
is a true and correct copy of the original judgment in the underlying case. Therefore, the district
clerk's office has fully satisfied its legal obligations in response to Tasby's request. Tasby is entitled
to no more relief than he has already received.

 As Tasby has already received that for which he is legally entitled, the district court has no
ministerial duty to direct the elected district clerk of Bowie County to take further action. Tasby's
claim to the contrary is meritless. 

 Accordingly, we deny Tasby's petition.




 Bailey C. Moseley

 Justice



Date Submitted: January 11, 2007

Date Decided: January 12, 2007



t the State failed to disclose exculpatory evidence, and (5) that he has been
subjected to cruel and unusual punishment under the Eighth Amendment to the United States
Constitution. We affirm.
I. Factual Sufficiency
            In his first point of error, Bryant contends the evidence is factually insufficient to support his
conviction. There are two ways in which we may find the evidence to be factually insufficient. See
Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). First, if the evidence supporting the
verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the evidence
supporting and contravening the conviction—we conclude that the contrary evidence is strong
enough that the State could not have met its burden of proof, we must find the evidence insufficient. 
Id. at 484–85. If we conclude the evidence is factually insufficient, we must reverse the trial court's
judgment and remand the case for a new trial. Id. at 482; Harvey v. State, 173 S.W.3d 841, 849
(Tex. App.—Texarkana 2005, no pet.). The indictment alleged Bryant "intentionally and knowingly
cause[d] the sexual organ of [S.B.], a person younger than fourteen years of age and not the spouse
of the Defendant to CONTACT the SEXUAL ORGAN of THE DEFENDANT." The State's
evidence during guilt/innocence consisted of the testimony from several witnesses who testified over
a period of two days. We offer the following abbreviated review of the relevant evidence.
            The victim's mother and the State's outcry witness


 testified S.B., a child younger than
fourteen years, lived with Bryant, her father, from December 2000 until June 2001. S.B.'s mother
testified S.B. had told her that, while S.B. lived at Bryant's house, Bryant would pull off S.B.'s
underwear and hurt her. S.B. had told her mother that Bryant put his penis inside of her. S.B.
reportedly cried when Bryant did this, and she asked Bryant to stop, but, "He didn't stop, he didn't
listen to me." After this outcry, S.B.'s mother took S.B. to the Children's Assessment Center in
Houston, Texas, for examination.



            S.B. testified she was between the ages of seven and eight years of age when she lived with
Bryant. S.B. told the jury there were times that, after she had gone to bed for the evening, Bryant
would come into her bedroom and carry S.B. into his bedroom. Bryant would then lay S.B. in his
bed and either get on top of her or be kneeling over her. Bryant would not be wearing any clothes
at this time. Bryant would then take off S.B.'s underwear and begin touching her vagina. S.B.
testified that, after he rubbed her vagina for awhile, Bryant would then put his erect penis inside her
vagina, causing S.B. to experience pain. S.B. said she also twice experienced vaginal bleeding from
the sexual assaults. S.B. estimated Bryant sexually assaulted her between ten and twenty times
during the six to seven months she lived with Bryant. S.B. also told the jury that Bryant threatened
to kill her if she ever told anyone about the assaults. On cross-examination by defense counsel, S.B.
told the jury that these sexual assaults began about the third night of her stay with Bryant. 
            Dr. Rebecca Girardet, a pediatrician with the University of Texas School of Medicine in
Houston who specializes in child sexual abuse, performed the medical examination of S.B. at the
Children's Assessment Center. During the medical examination, S.B. reported having a white,
yellowish vaginal discharge during the previous six months.


 Girardet, however, said the cause of
the discharge could be anything from a sexually transmitted disease to the overuse of bubble bath.


 
According to Girardet, S.B. reported coming to the Children's Assessment Center because her father
had forced her to have sexual intercourse. Girardet asked S.B. if she meant that he had put his penis
in her vagina, to which S.B. responded by nodding "yes." Girardet then asked S.B. if her father ever
put his penis in her "bottom" or her mouth, and S.B. shook her head, indicating "no." S.B. also told
Girardet that Bryant did not use a condom during the sexual assaults, and reported to Girardet that
these sexual assaults occurred one or two times a week during the period in which S.B. had lived
with Bryant. S.B. also told Girardet about having vaginal bleeding as a result of the sexual assaults. 
During the physical examination, Girardet noticed a portion of S.B.'s hymen was absent, a condition
which is not normal and which Girardet concluded was a sign S.B. had experienced "penetrating
trauma" of the vagina. Girardet also saw "healed trauma at the vaginal entrance of [S.B.'s] vagina." 
Based on this physical evidence, Girardet concluded the injury to S.B.'s hymen was consistent with
her complaint about being sexually assaulted. 
            On cross-examination, however, Girardet admitted that she observed no bruising of S.B.'s
vaginal area during the examination. Nevertheless, the absence of any bruising was unremarkable
given the two-year delay between the time of the sexual assaults and the time of Girardet's
examination of S.B.
            Nickal Bryant, the appellant's eldest daughter, also lived in Bryant's house at the time of the
assaults. Nickal testified she did all of S.B.'s laundry and had never noticed any blood on any of
S.B.'s clothing. She also did not see anything unusual occurring between Bryant and S.B., such as
S.B. being carried to Bryant's bedroom in the middle of the night. 
            Given this evidence, we cannot say the evidence supporting the jury's verdict, standing alone,
is too weak to support a finding of guilt beyond a reasonable doubt. See Zuniga, 144 S.W.3d at 484. 
Nor can we say that there is any weighty evidence contravening the conviction such that we would
be led to conclude the State could not have met its burden of proof. See id. at 484–85. Accordingly,
we conclude the evidence is factually sufficient and overrule Bryant's first point of error.
II. Ineffective Assistance of Counsel
            In his second point of error, Bryant contends he received ineffective assistance of counsel at
trial. More specifically, Bryant complains his trial counsel failed to interview any of the State's
witnesses before trial, failed to interview Bryant's eldest daughter before trial, failed to call any
expert witnesses, failed to call other members of Bryant's immediate family to testify on his behalf,
failed to request a pretrial hearing ten days before the commencement of trial, failed to review the
State's evidence before trial, failed to issue subpoenas for any defense witnesses, and failed to
discuss trial strategy with Bryant. 
            To prevail on a claim of ineffective assistance of counsel at trial, an appellant must prove by
a preponderance of the evidence that trial counsel performed deficiently and that the appellant
suffered prejudice as a direct result of any alleged deficient performance such that, but for the
deficient performance, the result of the trial would have been different. Bulington v. State, 179
S.W.3d 223, 232 (Tex. App.—Texarkana 2005, no pet.). 
            In this case, Bryant has made no effort to show to this Court that he suffered any prejudice
as a direct result of any of the above-referenced alleged deficiencies. As such, this issue has, at best,
been inadequately briefed. See Tex. R. App. P. 38.1(h). Moreover, we note that there was no hearing
on Bryant's motion for new trial. As such, the record before us has been inadequately developed and
Bryant's trial counsel has not yet had the opportunity to respond to Bryant's claims. Cf. Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). For these reasons, we overrule Bryant's
second point of error.
III. Due Process Claim
            Bryant claims he was denied constitutional due process because the indictment failed to
inform him of the charge. Bryant did not raise this issue before trial. A defendant's failure to object
to any alleged defects in an indictment before the commencement of trial serves to waive such claims
on appeal. Studer v. State, 799 S.W.2d 263, 273 (Tex. Crim. App. 1990); Burton v. State, 805
S.W.2d 564, 570 (Tex. App.—Dallas 1991, pet. ref'd). Bryant's failure to raise this claim before trial
waives the issue for our review. Additionally, we cannot say the indictment, as quoted previously
in this opinion, failed to provide Bryant with constitutionally adequate notice of the charge against
him. We, therefore, overrule this point of error.
IV. Exculpatory Evidence
            In his reply to the State's brief, Bryant raises the new argument that the State failed to disclose
exculpatory evidence to the defense. Specifically, Bryant alleges the State, "through its agent, the
Smith [sic] County Sheriff's Office, failed to disclose to defense counsel statements and reports of
Ralph East and Kelly Stroud." We have reviewed the record in this case and find no support for such
a claim. Nor has Bryant directed our attention to any location in the record where there was evidence
such allegedly exculpatory evidence was requested by Bryant, that it was possessed by the State, or
that the State failed to disclose such. As such, this issue has been, at best, inadequately briefed and
is overruled. See Tex. R. App. P. 38.1(h). 
V. Cruel and Unusual Punishment
            Finally, Bryant raises another new issue in his responsive brief to the State's brief: Bryant
claims he has been subjected to cruel and unusual punishment in violation of the United States
Constitution's Eighth Amendment because his trial counsel failed to request a continuance so that
Bryant could have additional time to consider the State's plea offer. Bryant did not raise this issue
in his opening brief. It is well settled that an appellant may not raise new issues in a reply brief. 
State v. Sanchez, 135 S.W.3d 698, 700 (Tex. App.—Dallas 2003), aff'd, 138 S.W.3d 324 (Tex. Crim.
App. 2004). We overrule Bryant's final issue.
VI. Conclusion
            For the reasons stated, we affirm the trial court's judgment.



                                                                        Jack Carter
                                                                        Justice

Date Submitted:          May 23, 2006
Date Decided:             June 22, 2006

Do Not Publish