In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00032-CR


______________________________




KHOURY RAY ROBERSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 19,032-2005




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 In a single trial, a Wood County jury convicted Khoury Ray Roberson in six cases (1) of having
sexually assaulted his granddaughter, T.K., over the span of about two years. The jury recommended
a sentence of eight years on each conviction, and the trial court ordered these sentences to run
consecutively. Roberson appeals his six convictions, raising two points of error. He complains first
that the trial court erred in its failure to include, sua sponte, in its punishment phase jury instructions
that extraneous offenses introduced by the State must be proven beyond a reasonable doubt. His
second point of error maintains that the trial court erred when, at the conclusion of the State's case-in-chief, he refused Roberson's request to require the State to elect the incidents for which it would
seek convictions. Upon a thorough review of the record and after having considered the oral
arguments, we affirm the trial court's judgments. 

Evidence at Trial

 The child complainant, T.K., testified that, during her freshman year in high school (about
2003), her sister moved out of the family mobile home. When that happened, T.K.'s parents, her
brother, Roberson (T.K.'s biological grandfather), and she were the occupants of the home. T.K.
moved into her sister's room, and Roberson moved into the bedroom with her. This apparently was
done with T.K.'s parent's consent. Roberson began his advances by kissing T.K. and then "went
further," eventually "having sex with me." (2) T.K. testified that the two engaged in sex "[a]t least ten"
times while sharing the bedroom in this mobile home. T.K. then related that she and Roberson had
moved to an apartment together in Sulphur Springs (Hopkins County), where they shared a one
bedroom apartment, sleeping in the same bed; (3) while living in that apartment, T.K. said they had sex
"ten or more" times. After moving from that apartment, Roberson and T.K. lived together in a house
(with T.K.'s uncle) in Winnsboro (Wood County), where Roberson and T.K. shared a bedroom and
engaged in sex more than five times, but less than ten times.

 On Memorial Day weekend 2005, the family camped out at a local lake. Late on Saturday
night or early Sunday morning, T.K.'s grandmother, Kathleen Folmar, and her husband, Danny
Folmar, were awakened by Roberson and T.K., who were engaged in a loud quarrel. Kathleen
testified that she heard Roberson say, "Bitch, get back here, that's my baby you're carrying." Danny
testified that Roberson said, ''I'm the one f'ing her. . . . I'm not f'ing her, I'm making love to her. 
. . . [I]f she's got a baby in her, it's my love child." Family friend, Nicole Bray, arrived later in the
weekend. She spoke to Roberson, who seemed upset about the quarrel. Roberson told Bray he had
"made love" to T.K. 

 Two letters written by Roberson and intended to be sent to T.K., written while he was in jail
awaiting trial, were introduced. In these letters, Roberson referred to T.K. as "Baby" and said that
he still wanted to "be" with her "when this is over." In the letters, he said that he loved her and that
he had told his mother to get along with T.K. because, "She knows how I feel about and what I want
to do with you. Baby there is no one who can stop what I feel for you." 

 At the punishment phase, Kathleen testified again; when she was asked if she thought that,
if Roberson were granted community supervision, he would stay away from T.K., Kathleen replied
in the negative, saying, "We've tried that before." 

 For the sake of convenience, we first address Roberson's second point of error. 

Roberson Failed to Preserve Error on His Request to Make the State Elect Which Conduct It
Was Relying Upon for Conviction


 Roberson complains in his second point of error "The Trial Court erred when it failed to
require the State to elect the specific act it would rely upon for the indicted offense in violation of
Article V, Section 13 (4) of the Texas Constitution, and the Fifth Amendment to the United States
Constitution." The State argues Roberson did not properly preserve this matter for appeal. After
reviewing the trial record, we concur with the State's position.

 At the conclusion of the State's case-in-chief, Roberson requested that the trial court require
the State to elect (as to each of the six indictments) which of multiple offenses for which it was
seeking convictions. The following is part of the exchange between Roberson, the trial court, and
the State: 

 [DEFENSE COUNSEL]: Your Honor, if it please the Court, we would first
reurge our motion to require the State of Texas to elect a specific offense in each one
of these six indictments for purposes of jeopardy. 

 And if the State is unable to elect specific incidents and dates, we would like
the record to reflect that they are unable to do that for jeopardy purposes.

 

 . . . . 

 

 [THE STATE]: Pursuant to the law, I believe we will have a limiting
instruction as to any particular events that occur other than the dates in the
indictments plus there will be a charge that the State is not bound by the date in the
indictments anyhow. 

 I would stipulate for the record that the State does not intend to seek
additional charges for these dates. In other words, inclusive dates from the beginning
of the first indictment through the date of trial here against the Defendant.

 

 THE COURT: And you're referring there to those that were alleged to have
occurred in Wood County, Texas?

 

 [THE STATE]: Yes, sir.

 

 THE COURT: Anything further, [defense counsel]?

 

 [DEFENSE COUNSEL]: No, sir. I think the record is, is clear with that
stipulation by [the State] that if I understand correctly, from whatever time period
that is before the jury, no additional charges would be made in the event - - 

 

 [THE STATE]: By Wood County, yes.

 

 THE COURT: That's the Court's understanding that, that, that these charges
are intended to cover everything of this nature that occurred as alleged in the
indictments in Wood County, Texas. 

 All right. Anything further at this time, [defense counsel]?


 [DEFENSE COUNSEL]: Not with respect to that, Your Honor.


 Defense counsel then called Roberson to the stand in order to make a record of Roberson's
understandings and wishes pertaining to his right to testify. 

 Roberson's only expressed complaint at trial regarding the need for election by the State (i.e.,
the only relief he stated that he sought from the trial court concerning this issue) was protection
against prosecution for the unindicted conduct which was introduced in the form of extraneous-offense evidence at trial. Roberson clearly asked the trial court to require the State to make an
election so that he would be protected against double jeopardy for these multiple unindicted offenses. 
The State offered a stipulation that it would not seek convictions for any of the other offenses alleged
by T.K. After the State had expressed its intention not to pursue prosecution of any of these other
offenses which occurred in Wood County, the trial court asked if Roberson requested any other
relief. Roberson unequivocally indicated that he was then satisfied and that he requested no other
action. It is plain that Roberson received all the relief he requested at trial and, therefore, did not
preserve any error for review. See generally Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App.
1993) (objection to jury argument sustained, defendant sought no further relief); Lasker v. State, 573
S.W.2d 539, 543 (Tex. Crim. App. [Panel Op.] 1978) (defendant objected to trial court statement
as a comment on weight of evidence; objection sustained, but no instruction to disregard or mistrial
requested); Cazares v. State, 488 S.W.2d 110, 112 (Tex. Crim. App. 1972) (objection to State
question sustained and limiting instruction administered; no mistrial requested); Harvey State, 173
S.W.3d 841, 846-47 (Tex. App.--Texarkana 2005, no pet.) (trial court granted defendant's request
and made a copy of prosecutor's file part of record for appellate purposes; defendant failed to make
any record of what he thought prosecutor's testimony would concern, thus, failed to preserve
complaint of not being allowed to put prosecutor on stand).

 Finding nothing preserved for our review, we overrule this point of error. 

No Egregious Harm Where Punishment Charge Failed to Instruct Jury that Extraneous
Offenses Must Be Proven Beyond a Reasonable Doubt

 Roberson complains that the trial court erred by failing to include in the jury's penalty phase
instructions that evidence of extraneous offenses must be proven beyond a reasonable doubt before
those extraneous offenses could be considered by the jury. Finding Roberson has not demonstrated
egregious harm from this error, we will overrule the point of error. 

 As shown above, there was evidence of many offenses which were not the subject of
indictments and were, therefore, offenses that were extraneous to those for which Roberson was
tried. 

 When evidence of extraneous offenses is presented at the punishment phase of a trial, those
acts must be proven beyond a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(Vernon 2006); Huizar v. State, 12 S.W.3d 479, 483, 484 (Tex. Crim. App. 2000); Allen v. State, 47
S.W.3d 47, 50 (Tex. App.--Fort Worth 2001, pet. ref'd) ("Thus, the trial court is required, when
punishment phase evidence of extraneous offenses or bad acts evidence is admitted, to sua sponte
instruct the jury on the reasonable-doubt standard of proof concerning the extraneous offenses and
bad acts."). Therefore, the trial court erred in failing to include an appropriate instruction concerning
the burden of proof pertaining to the extraneous offenses when charging the jury on punishment. 

 During T.K.'s testimony, Roberson objected to her testimony regarding extraneous offenses
and asked that the jury be admonished regarding them. However, he lodged no objection to the
punishment charge when asked by the trial court if there were any objections to that charge. 

 Where no proper objection is lodged, an appellant must prove he suffered egregious harm,
such that he did not receive a fair and impartial trial. Martin v. State, 200 S.W.3d 635, 639-40 (Tex.
Crim. App. 2006) (citing Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on
reh'g)). Roberson's objections during trial were insufficient to preserve the error concerning the
punishment charge; in order to do so, he was required to object to the punishment jury charge when
asked by the trial court. Absent a timely objection to the charge, Roberson must show that he
suffered egregious harm from the trial court's error in its failure to give the proper instruction. 
Almanza, 686 S.W.2d at 171. In determining whether egregious harm occurred, we review the error
in light of the entire jury charge, the state of the evidence (including the contested issues and the
weight of probative evidence), the argument of counsel, and all other relevant evidence revealed by
the record as a whole. Skinner v. State, 956 S.W.2d 532, 544 (Tex. Crim. App. 1997) (quoting
Almanza, 686 S.W.2d at 171). Errors resulting in egregious harm are those that affect the very basis
of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. Hutch v.
State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing Almanza, 686 S.W.2d at 172);
Washington v. State, 59 S.W.3d 260, 265 (Tex. App.--Texarkana 2001, pet. ref'd); see also
Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); Hall v. State, 937 S.W.2d 580, 583
(Tex. App.--Texarkana 1996, pet. ref'd).

 With the exception of the missing instruction regarding extraneous offenses, the punishment
charge was substantially correct. It instructed the jury on the range of punishment, required any
finding be unanimous, and discussed Roberson's eligibility for community supervision. 

 The evidence, previously summarized, is strong and compelling. 

 As to the argument of counsel, the State referenced Roberson's multiple, extraneous, sexual
activity with T.K. in both sections of its closing argument at punishment. However, just as much,
if not more, of the State's argument was used to ask the jury to sentence Roberson to twenty years'
incarceration on each of the multiple counts and arguing he was not a suitable candidate for
community supervision. 

 It is also a pertinent point that no one argued to or suggested to the jury that the burden of
proof for these extraneous offenses was any lower than it had been when the jury was instructed on
the guilt/innocence phase that matters had to be proven beyond a reasonable doubt. There is no
reason to believe that the jury lowered its standard beneath that of reasonable doubt.

 Most significant, in our view, as to whether Roberson was unduly prejudiced by the error is
the fact that the jury recommended sentences of only eight years of incarceration for each of
Roberson's six convictions when the State had asked for twenty years on each, the maximum
punishment for a second-degree felony. The extraneous offenses at issue are explicitly made
admissible, for the limited purpose of explaining the relationship between defendant and victim, by
statute. Tex. Code Crim. Proc. Ann. art 38.37 (Vernon Supp. 2006). Although not directly
relevant, we point out that in the guilt/innocence phase charge, the jury was correctly instructed that,
if it chose to consider the extraneous offenses testified to by T.K., it could only consider such
conduct if it (a) found the conduct true beyond a reasonable doubt, and (b) considered such acts only
as those acts pertained to either Roberson's or T.K.'s state of mind or their relationship. 

 Based on the totality of the circumstances and the above discussed aspects of this case,
Roberson has not demonstrated that he was deprived of a vital defensive theory or was denied a fair
and impartial trial. Taking all of the factors mentioned above into account, it does not appear that
the omission of the instruction had a substantial impact on the outcome of the case. Roberson having
failed to make a showing of egregious harm, we overrule his point of error. 

 We affirm the trial court's judgments. 

 


 Bailey C. Moseley

 Justice


Date Submitted: May 9, 2007

Date Decided: May 24, 2007


Do Not Publish


1. The other cases were appealed separately, and we dispose of those cases by separate
opinions this date in causes numbered 06-06-00033-CR, 06-06-00034-CR, 06-06-00035-CR, 06-06-00036-CR, and 06-06-00037-CR.
2. Roberson does not attack the sufficiency of the evidence, but at oral argument made
reference to imprecisions in the record as to what T.K. might have meant when she said Roberson
"had sex" with her. T.K. did demonstrate with anatomical drawings that Roberson "put his thing"
in her "private area." 
3. This was corroborated by the apartment manager, who noted it was a one bedroom
apartment, and when he had to let a maintenance worker in, he saw only one bed. 
4. Section 13 concerns the number of grand and petit jurors; however, in the body of his brief,
Roberson makes only passing reference to his constitutional complaints, and cites Texas Constitution
Article 5, Section 12, which defines indictments and informations.